Filed 2/27/15  Gallardo v. MTDS, Inc. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AARON D. GALLARDO, Individually and as Trustee for the AG Family Trust,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MTDS, INC., et al.,<br><br>    Defendants and Respondents. | H038404<br>(Santa Clara County<br> Super. Ct. No. 1-12-CV217221) |

Plaintiff Aaron D. Gallardo obtained a $750,000 loan secured by a deed of trust on real property.  After he defaulted on his loan and received a notice of trustee's sale, Gallardo individually and as trustee for the AG Family Trust (hereafter jointly Gallardo), sued his mortgage lender and other entities to prevent foreclosure of his home.  The complaint contained four causes of action:  (1) quiet title, (2) an accounting, (3) unfair business practices, and (4) declaratory relief.  Gallardo appeals from the trial court's order sustaining the defendants' demurrer without leave to amend.

Although labeled an action to "quiet title," we conclude that Gallardo's first cause of action also contains a claim to enjoin foreclosure of his home by non-authorized entities.  Based in part on facts that the trial court properly judicially noticed from recorded documents, we conclude the trial court properly sustained the demurrer to all

four causes of action in the complaint without leave to amend and will therefore affirm the judgment of dismissal.

## FACTS AND PROCEDURAL HISTORY

In reviewing the propriety of a trial court's order sustaining a demurrer, we accept as true all factual allegations properly pleaded in the complaint. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.) Accordingly, our summary of the facts is drawn from the material allegations of the operative pleading (Gallardo's original complaint), the documents attached thereto (which the complaint incorporated by reference), and facts the court properly judicially noticed. (*Ibid.*) Since a demurrer admits the truth of all facts properly pleaded, we will refer to the allegations of the complaint without sometimes using the prefatory phrase "Gallardo alleges," to avoid undue repetition of that phrase.

### *The Property and the Loan*

Gallardo is the owner of a single-family dwelling on Farm Hill Way in Los Gatos (the Property), which is his principal residence. In 2006, Gallardo obtained a $750,000 option adjustable rate mortgage (Option ARM) loan from MortgageIt, Inc. (MortgageIt). The "defining feature" of an Option ARM is that for a limited number of years at the beginning of the loan, the borrower may avoid defaulting on the loan by making a minimum monthly payment that is lower than the interest accruing on the loan. (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 234 (*Boschma*).) Since the minimum payment is insufficient to cover the interest due, the difference between the amount of interest accrued and the amount of the payment made is added to the loan's principal, thereby increasing the amount owed. Thus, after an initial period of years (five years in this case), "a borrower who elects to make only the scheduled payment[s] . . . owes more to the lender than he or she did on the date the loan was

2

made." (*Ibid*.) After this initial period during which negative amortization can occur, the borrower's payment schedule is reset to require minimum monthly payments that amortize the loan. (*Ibid*.)

Gallardo's $750,000 loan was to be repaid over 40 years. Initially, Gallardo's payments were $1,986.34 per month. The promissory note (Note) advised Gallardo of the possibility of negative amortization, but provided that the total amount of principal due would never exceed 115 percent of the amount originally borrowed (115 percent of $750,000 is $862,500). In 2011, Gallardo's payments were reset to $3,458.89 per month and by January 2012, the amount due for principal and "other charges" had increased to $859,958.28.

The loan was secured by a deed of trust (Deed of Trust) on the Property. The Deed of Trust identified Gallardo as the "Borrower," MortgageIt as the "Lender," Chicago Title Company as the "Trustee," and Mortgage Electronic Registration Systems, Inc. (MERS) as "acting solely as nominee for Lender and Lender's successors and assigns" and as the "beneficiary" under the Deed of Trust.

## *Default and Nonjudicial Foreclosure Proceedings*

Gallardo defaulted on his loan. On September 30, 2011, Meridian Foreclosure Service (Meridian), "the duly appointed Trustee, Substituted Trustee, or Agent of the Beneficiary," recorded a Notice of Default. The amount owed for "past due payments" and other costs was $30,436.28 as of September 28, 2011. The record indicates that (1) Gallardo was also in default in December 2008, (2) the lender recorded a notice of default at that time, and (3) the lender rescinded its notice of default in November 2009 after the parties agreed to a repayment plan. Gallardo later defaulted under the repayment plan.

On January 3, 2012, Meridian recorded a Notice of Sale, which stated that the total amount due for principal and "other charges" was $859,958.28 and that the sale was

3

scheduled for January 30, 2012.  Copies of the Note, Deed of Trust, and the Notice of Sale were attached to the complaint and incorporated therein.

*Legal Action*

Gallardo filed a verified complaint on January 23, 2012, one week before the date set for the trustee's sale.  The named defendants were MortgageIt and MERS and four entities that purport to be successors or assignees of the lender, the trustee, or the beneficiary, including:  (1) MTDS, Inc. (MTDS), doing business as Meridian; (2) Deutsche Bank National Trust Company (Deutsche Bank); (3) OneWest Bank (OneWest); and (4) Indymac Mortgage Services, a subsidiary of OneWest.  We shall refer to the defendants collectively as "Defendants."

The same day that he filed his complaint, Gallardo filed an application for a preliminary injunction and an ex parte application for a temporary restraining order (TRO) to restrain the trustee's sale pending a hearing on his application for a preliminary injunction.  In support of the TRO, Gallardo argued that the title records did not show a continuous chain of title that gave the "presumptive beneficiary" listed on the Notice of Sale the right to foreclose.  He argued that the legal question whether MERS has the capacity to assign any interest under the Note was unresolved and that there were irregularities in the assignments.  He also asserted that the Notice of Sale was defective because it did not contain a legal description of the property and that he had requested an accounting because the amount of the deficiency balance was disputed.  The court granted the TRO on the condition that Gallardo post a $5,000 cash bond.  The court also scheduled a hearing on Gallardo's application for a preliminary injunction.  The parties later stipulated to continue that hearing to May 30, 2012.

4

Gallardo made a number of other allegations in his complaint. He alleged that at an unknown time, "Indymac Bank, FSB" (IndyMac) organized a collateralized mortgage trust known as the "Indymac INDX Mortgage Loan Trust Series 2006 AR14" (the Trust). Deutsche Bank and Indymac were trustees of the Trust. Gallardo alleged that (1) Indymac went into receivership with the Federal Deposit Insurance Corporation (FDIC) in 2008, (2) OneWest acquired some of Indymac's assets from FDIC, (3) Indymac has since reorganized as Indymac Mortgage Services, and (4) OneWest is the "putative real party in interest under all assets bearing Indymac's name," including the Note and Deed of Trust. The complaint alleged that in 2009 Indymac, as a trustee of the Trust, received a "putative interest" in Gallardo's deed of trust "by means of a putative assignment endorsed by MERS." (Facts that are subject to judicial notice from recorded documents contradict this allegation.) The complaint also alleged that OneWest "did not perfect an interest in" the Deed of Trust or cause Indymac "to perfect an interest" before recording the Notice of Default and an assignment on September 30, 2011, and that MERS was never the "true beneficiary" of the Deed of Trust and therefore lacked legal capacity to declare a default, exercise the right of private sale, or assign any interest in the Note or Deed of Trust.

The complaint contained causes of action for quiet title, an accounting, unfair business practices, and declaratory relief. The quiet title cause of action asserted that Defendants improperly recorded the September 2011 Notice of Default and the Notice of Sale, both of which are clouds on Gallardo's title. Gallardo alleged the Notice of Default was improper because: (1) Defendants failed to comply with Civil Code section 2923.5 (all further undesignated statutory references are to the Civil Code), which requires a loan servicer to contact the borrower and assess the borrower's financial situation and explore options for the borrower to avoid foreclosure; (2) the notice did not comply with sections

2924 and 2924b; (3) the notice was improperly recorded because at the time of recording, "a lawful substitution of trustee was not of record executed by the true beneficiary"; and (4) the Note was not lawfully endorsed and assigned by the original lender to each succeeding lender as required under the California Uniform Commercial Code (UCC).

Gallardo alleged, among other things, that the Notice of Sale was improperly recorded because: (1) the Notice of Default was improper; (2) Meridian had not been properly substituted as trustee, (3) there was no proper or legal assignment of the Deed of Trust, and (4) "none of the actions by any purported trustee or beneficiary . . . were made with authority or right of private sale" under the Deed of Trust. Gallardo also alleged that MERS had no power to transfer an interest in the Note or Deed of Trust or exercise any other powers of the beneficiary because it did not have a financial interest in the debt, and that the assignment of the Deed of Trust to Deutsche Bank and the substitution of Meridian as trustee were invalid.[1]

The second cause of action for an accounting alleged that the description of the index used to calculate the variable interest rate in the Note was uncertain and ambiguous and that the correct rate of interest therefore could not be ascertained. Gallardo argued that the deficiency declared in the Notice of Default was therefore "overstated" and in excess of the true amount. He asked the court to determine the "correct interest rate . . . during the life of the loan," to recalculate the amount of interest due and the credit for payments he had made, and to determine the correct deficiency balance due to cure the default. He also asked the court to declare that the Note was a contract of adhesion, a claim he has abandoned on appeal.

---

[1] The complaint also alleged the Notice of Sale was improper because the statutory notice procedures (§2923 et seq.) were not followed, including failures to (a) serve the AG Family Trust with all foreclosure notices; (b) identify the beneficiary for whom Meridian was acting; and (c) provide a legal description of the Property. Gallardo appears to have abandoned these claims on appeal.

6

The third cause of action for unfair business practices alleged that Meridian "is engaged in a . . . deceptive, fraudulent and unfair business practice" of publishing and recording notices of trustee sales that fail to (1) identify the party ordering the foreclosure and (2) accurately describe the property involved, as required by law. Gallardo argued that this practice, by impeding communication between the borrower and the party foreclosing on the loan, "impairs the state polic[ies]" of encouraging sales to the highest bidder and of keeping consumers in their homes. Gallardo also alleged that all defendants engaged in the unfair business practice "of failing to secure and endorse over . . . the original promissory note," which violated the UCC and created a risk that the original noteholder would demand payment from the borrower after the Property was sold in foreclosure. He argued that these practices could result in a loss of title to the property, damage to his credit, and cause economic losses, including litigation expenses.

The fourth cause of action for declaratory relief alleged that the parties disputed: (1) the amount of the deficiency balance; (2) whether an accounting was required because of uncertainty regarding the interest rate; (3) whether the assignment, substitution of trustee, Notice of Default, and Notice of Sale were valid; (4) whether any future trustee's sale "will be void"; and (5) whether MERS was a "true beneficiary of the Deed of Trust with capacity to assign any interest."

### *Demurrer*

In April 2012, Deutsche Bank (as trustee of the Trust), OneWest (which stated that it was erroneously sued in the name of its division, Indymac Mortgage Services), and MERS demurred to the complaint. (MDTS, Meridian, and MortgageIt have not appeared in the action and are not parties to this appeal. Hereafter, "Defendants" shall refer only to defendants that filed the demurrer.)

Defendants argued they had standing to commence foreclosure proceedings as the servicer and the assigned beneficiary of the loan and did so in accordance with the

7

statutory scheme (§ 2924 et seq.). Defendants asserted that in 2006, a few months after the loan was made, Gallardo's loan was "pooled and securitized" and all beneficial interest under the Deed of Trust and the Note was assigned to Deutsche Bank as trustee of the Trust.

Defendants demurred to the quiet title cause of action on the ground that Gallardo had not alleged that he had tendered or offered to tender the amount due, arguing that a borrower may remain in possession, but may not quiet title without paying the debt. Defendants also argued that (1) claims for wrongful foreclosure based on a lack of standing fail as a matter of law, (2) the foreclosure was initiated in accordance with law (3) California courts have rejected attempts to premise wrongful foreclosure claims on alleged UCC violations, (4) Gallardo's conclusory allegations did not support a violation of section 2923.5, and (5) Gallardo could not sue to quiet title because he was not the legal owner of the Property and had only an equitable interest.

Defendants attacked the accounting cause of action on the grounds that a plaintiff is entitled to an accounting only if there is a fiduciary relationship between the parties and there is a balance due from a defendant to a plaintiff, whereas (1) there is no fiduciary relationship here; and (2) Gallardo is indebted to Defendants. Defendants' demurrer to the unfair business practices claim argued that Gallardo had not alleged injury, that any harm could have been avoided by paying the debt, that the claim was not pleaded with sufficient particularity, and that there was no predicate law violation. They also argued that the declaratory relief claim failed because declaratory relief lies only to adjudicate future rights and liabilities whereas Gallardo's claims are based on past wrongs (the alleged wrongful foreclosure in September 2011).

In their memorandum of points and authorities in support of their demurrer, Defendants described nine documents, which they asserted the court could properly judicially notice on demurrer. But Defendants' request for judicial notice asked the court to judicially notice only one document: a master purchase agreement between the FDIC

8

(as conservator for Indymac), OneWest, and one other entity dated March 18, 2009, a copy of which Defendants obtained from the FDIC website and attached to their request for judicial notice. Defendants neglected to list the other eight documents or attach copies of those documents to their request for judicial notice.

Gallardo filed written opposition to the demurrer. He did not object to Defendants' request for judicial notice.

In their reply, Defendants urged the court to deny leave to amend because Gallardo had not demonstrated how his complaint could be amended. With their reply, Defendants filed an "Errata" to their request for judicial notice, which contained all nine documents referenced in their points and authorities. Unfortunately, the parties neglected to include a copy of the Errata in the record on appeal. On our own motion, we have augmented the record to include a copy of the Errata and the exhibits attached thereto. (California Rules of Court, rule 8.115(a)(1)(A); all further rules citations are to the rules of court.)

The documents Defendants asked the court to judicially notice in the "Errata" included: (1) an executed copy of the Deed of Trust; (2) a prior notice of default recorded in December 2008; (3) a rescission of the first notice of default recorded in November 2009; (4) an assignment of the beneficial interest in the Deed of Trust and the Note from MERS as nominee for MortgageIt to IndyMac Federal Bank recorded in February 2009; (5) the master purchase agreement attached to Defendants' first request for judicial notice; (6) an assignment of the Deed of Trust and the Note from the FDIC, as receiver for IndyMac Federal Bank, to Deutsche Bank recorded on September 30, 2011; (7) a substitution of trustee recorded on September 30, 2011, executed by OneWest on behalf of Deutsche Bank, substituting Meridian, as trustee; (8) the Notice of Default recorded by Meridian on September 30, 2011; and (9) the Notice of Sale recorded by Meridian on January 3, 2012.

9

Before the hearing on the demurrer, Defendants filed written opposition to Gallardo's request for a preliminary injunction, which repeated the arguments made in their demurrer, essentially arguing that Gallardo was not entitled to a preliminary injunction because he was not likely to prevail on his claims.

On May 22, 2012, the court sustained the demurrer without leave to amend. Although the court provided a detailed, written tentative ruling, which it adopted as its order on the demurrer, it did not expressly rule on Defendants' requests for judicial notice.

On May 31, 2012, a different judge took Gallardo's request for a preliminary injunction off calendar because there was "no possible basis for granting any kind of relief" after the court sustained the demurrer without leave to amend. Gallardo filed his notice of appeal that same day.

## DISCUSSION

### I. *Appealability*

Gallardo appeals from an order sustaining the demurrer to his complaint without leave to amend. But such an on order is not appealable. As this court has stated many times, the "general rule of appealability is this: 'An order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a [judgment of] dismissal on such an order.' [Citation.] But 'when the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order [sustaining the demurrer] to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' " (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1 (*Melton*).) A judgment of dismissal that leaves no issue remaining to be determined as to one of multiple parties is final as to that party and may be appealed. (*Justus v. Atchison* (1977)

10

19 Cal.3d 564, 567-568, disapproved on another ground as stated in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171; *Tinsley v. Palo Alto Unified School District* (1979) 91 Cal.App.3d 871, 880.) That some of the named defendants were not parties to the demurrer does not render any judgment of dismissal unappealable.

In many cases, the prevailing party on a demurrer neglects to obtain a judgment of dismissal. In this case, it appears Defendants did not have an opportunity to obtain a judgment of dismissal, since Gallardo filed his notice of appeal prematurely: nine days after the hearing on the demurrer and four weeks *before* the court signed the written order sustaining the demurrer without leave to amend. But since the trial court sustained the demurrer to all of Gallardo's causes of action without leave to amend as to Defendants, they are entitled to a judgment of dismissal. " 'We will accordingly deem the order on the demurrer to incorporate a judgment of dismissal and will review the order.' " (*Melton*, *supra*, 183 Cal.App.4th at p. 527, fn. 1; see also *Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906 [notice of appeal filed after minute order but before entry of signed written order treated as filed immediately after entry of written order]; but see *Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1180 [Fourth District Court of Appeal, Division 2, discontinued its policy of "saving" premature appeals and reaffirmed that "the responsibility to perfect appeals is firmly on the shoulders of appellants"].)

## II. Defects in Gallardo's Opening Brief

California Rules of Court, rule 8.204(a)(2)(c) provides that an "appellant's opening brief must . . . [p]rovide a summary of the significant facts limited to matters in the record." (All further rules citations are to the California Rules of Court.) Rather than include a statement of facts, Gallardo's opening brief merely states that "[o]n appeal from an order [sustaining] a demurrer without leave to amend, the relevant facts are those alleged by the complaint." He goes on to incorporate the complaint and its exhibits—

11

37 pages in all—by reference. This does not comply with the requirements of rule 8.204(a)(2)(C). (See also *State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc*. (2011) 197 Cal.App.4th 963, 968 [failure to provide a statement of facts as required by rule 8.204(a)(2)(C) was a "flagrant violation" of the rule and one factor the court considered in imposing sanctions on appeal]; *Lopez v. C.G.M. Development, Inc*. (2002) 101 Cal.App.4th 430, 435-436, fn. 2 [party that provides inadequate statement of facts "cannot be heard to complain" that appellate court overlooked any material facts on review of summary judgment].)

Gallardo also neglected to include a statement of appealability in his brief. Rule 8.204 requires the appellant to either "[s]tate that the judgment appealed from is final, or explain why the order appealed from is appealable." (Rule 8.204(a)(1)(B); see also *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 557 [statement of appealability is mandatory; court may strike nonconforming brief].) If Gallardo had complied with this requirement, he would have discovered the appealability issue discussed in the previous section and presumably taken the steps necessary to perfect his appeal.

When a party's brief fails to comply with the requirements of rule 8.204, the appellate court may decline to file it, return it for corrections, strike it with leave to file a new brief, or "disregard the noncompliance." (Rule 8.204(a)(1)(E).) We shall exercise our discretion to disregard the noncompliance in this case, but admonish Gallardo and his counsel that future breaches of these requirements may result in sanctions or other consequences.

### III.    *Standard of Review and Burden of Proof on Appeal*

We review a judgment of dismissal after the trial court has sustained a demurrer without leave to amend under the de novo standard of review. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) We assume the truth of (1) all facts properly pleaded, (2) facts that may be implied or reasonably inferred from the facts

12

expressly alleged, and (3) evidentiary facts that are in exhibits attached to the complaint. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6, (*Evans*); *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 953; *Satten v. Webb* (2002) 99 Cal.App.4th 365, 375.)  We may also consider matters that are properly judicially noticed.  (*Schifando*, at p. 1081.)  But we do not assume the truth of contentions, deductions or conclusions of fact or law.  (*Evans*, at p. 6.)  If facts appearing in exhibits to the complaint conflict with the allegations of the complaint, the facts stated in the exhibits control, unless the exhibits are ambiguous.  (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83 (*SC Manufactured*).)  We give the complaint a reasonable interpretation and read it in context.  (*Schifando*, at p. 1081.)

"[T]o prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error.  Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer."  (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052 (*Intengan*).)  We will affirm the judgment if there is any ground on which the demurrer could have been properly sustained.  (*Ibid.*, citing *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.)

When the trial court sustains a demurrer without leave to amend, we review its determination that no amendment could cure the defect for an abuse of discretion.  (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)  The trial court abuses its discretion if "there is a reasonable possibility the plaintiff could cure the defect with an amendment."  (*Ibid.*)

### IV. General Principles Regarding Deeds of Trust and Nonjudicial Foreclosure

"The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust."  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507 (*Jenkins*).)  "There are three parties in the typical deed of trust:  the trustor (debtor), the beneficiary (lender), and the trustee."  (*Biancalana v.*

13

*T.D. Service Co.* (2013) 56 Cal.4th 807, 813 (*Biancalana*).) A deed of trust *conveys title* to real property from the trustor (debtor) to a third party trustee to secure the payment of a debt owed to the beneficiary (lender) under a promissory note. The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary to foreclose on the real property security if the trustor fails to pay back the debt owed under the promissory note. (*Jenkins*, at p. 508.) The deed of trust in this case granted the power of sale to both the trustee and the beneficiary, as well as the beneficiary's nominee, MERS.

Although the deed of trust technically conveys title to the real property from the trustor (debtor) to the trustee, "the extent of the trustee's interest in the property is limited to what is necessary to enforce the operative provisions of the deed of trust." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 508.) Generally, a deed of trust requires the trustee to perform one of two "mutually exclusive duties": (1) if the trustor (debtor) defaults on the debt, the trustee must initiate foreclosure on the property for the benefit of the beneficiary (lender); or (2) if the trustor satisfies the secured debt, the trustee must convey title to the real property back to the trustor, extinguishing the security device. (*Ibid.*) Despite the security interest the deed of trust creates, the trustor "retains all incidents of ownership with regard to the real property, including the rights of possession and sale." (*Ibid.*)

When a borrower defaults on a debt secured by a deed of trust, the lender may elect to judicially or nonjudicially foreclose on the real property security. " ' "Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption." ' " (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 508, 509-510.)

Sections 2924 through 2924k set forth a " 'comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.]" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 508, original italics;

*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) "These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." (*I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285) " 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).)

A nonjudicial foreclosure is "presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270 (*Fontenot* ) [applying presumption in action for wrongful foreclosure brought after sale had occurred]; *Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 443 (*Debrunner*) [applying presumption in action to prevent nonjudicial foreclosure sale from occurring].) Therefore, a debtor who seeks to prevent a nonjudicial foreclosure based on the foreclosing entity's purported lack of authority must "affirmatively" plead facts demonstrating a lack of authority. (*Fontenot*, at p. 270; *Jenkins*, *supra*, 216 Cal.App.4th at p. 512 [to state a cause of action challenging a foreclosing entity's authority to conduct a nonjudicial foreclosure, the trustor (debtor) must allege a "*specific factual basis*" establishing a lack of authority (original italics)]; *Gomes*, *supra*, 192 Cal.App.4th at pp. 1155-1156.) A debtor may not bring a preemptive lawsuit seeking to force the foreclosing entity to prove its authority before conducting a nonjudicial foreclosure. (*Jenkins*, at pp. 511-513.) Allowing a judicial action to prevent a nonjudicial foreclosure without specific factual allegations showing a lack of authority "would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' created by the Legislature, and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.' " (*Id.* at p. 512; see also *Gomes*, at pp. 1154-1156.)

### V. *First Cause of Action to Quiet Title (or Enjoin the Foreclosure Sale by Non-Authorized Entities)*

Gallardo argues the trial court erred when it sustained the demurrer to his first cause of action to quiet title based on his failure to allege that he had tendered the amount due under the loan. Gallardo acknowledges that to quiet title against the noteholder, he must allege tender of the balance due under the loan. He asserts, however, that he does not seek to eliminate the Deed of Trust lien or to quiet title against the original noteholder "or a true and rightful successor in interest." Instead, he contends the note was not properly assigned and he has no duty to tender to anyone that is a "pretender to ownership of the note." He also argues that the trial court erred when it sustained the demurrer on tender grounds because the tender requirement does not apply when a foreclosure sale has not yet taken place and his action seeks to prevent or enjoin, rather than set aside, the foreclosure sale.

#### A. Tender Requirement

We begin with the premise that generally, a borrower may not quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based. (*Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707 ["mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee"]; *Aguilar v. Bocci* (1974) 39 Cal.App.3d 475, 477 [borrower cannot quiet title without discharging the debt].) The cloud on title remains until the debt is paid. (*Burns v. Hiatt* (1906) 149 Cal. 617, 620-622.)

To obtain equitable relief to *set aside* a foreclosure sale, the defaulted borrower must tender the full amount of the debt for which the property was security. (*Dimock v. Emerald Properties, LLC* (2000) 81 Cal.App.4th 868, 877-878 (*Dimock*).) Case law has recognized four exceptions to the tender requirement in actions to set aside a foreclosure sale, including (1) when the borrower attacks the validity of the debt (e.g. based on

16

fraud); (2) the borrower has a counter-claim or set-off sufficient to cover the amount due; (3) it would be inequitable as to a party not liable for the debt; or (4) the trustee's deed is void on its face (e.g., because the trustee lacked power to convey property). (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112-113 (*Lona*).) In *Dimock*, the court held that no tender was required to set aside a foreclosure sale where the trustee that conducted the sale no longer had the power to sell because the noteholder had recorded a substitution of trustee prior to the date of the sale. Consequently, the foreclosure by the first trustee was void and the borrower did not have to tender the full amount of the debt to set it aside. (*Dimock*, *supra*, 81 Cal.App.4th at pp. 871-878.)

But "[w]hile the tender requirement may apply to causes of action to *set aside* a foreclosure sale, a number of California and federal courts have held or suggested that it does not apply to actions seeking to *enjoin* a foreclosure sale—at least where the lenders had allegedly not complied with a condition precedent to foreclosure. (See, e.g., *Pfeifer v. Countrywide Home Loans, Inc*. (2012) 211 Cal.App.4th 1250, 1280-1281 . . . [failure to allege tender of full amount owed did not bar declaratory relief or injunctive relief based on wrongful foreclosure, where lenders had not yet foreclosed and borrowers alleged that lenders had not complied with servicing regulations that were a condition precedent to foreclosure]; *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 225 . . . [borrower not required to tender full amount of indebtedness in seeking to enjoin foreclosure sale based on alleged failure to comply with . . . § 2923.5] (*Mabry*); *Barrionuevo v. Chase Bank, N.A*. (N.D.Cal.2012) 885 F.Supp.2d 964, 969-970 & fn. 4 [no tender requirement where foreclosure sale had not yet occurred, in case where noncompliance with . . . § 2923.5 was alleged] (*Barrionuevo*).)" (*Intengan*, *supra*, 214 Cal.App.4th at pp. 1053-1054, original italics.) In *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, the court concluded that *Pfeifer* and the other tender cases were inapplicable because the borrower had not sued to set aside or prevent

17

a foreclosure sale. Instead, "he sought to quiet title to the property, which he [could] not do without paying the outstanding indebtedness." (*Id.* at p. 87.)

In summary, (1) the tender requirement applies to actions to *quiet title*, (2) because of various exceptions recognized in the case law, the tender requirement may not apply to an action to *set aside a foreclosure sale*, and (3) the great majority of authority suggests it does not apply to actions to *enjoin a nonjudicial foreclosure sale*.

Although Gallardo labeled his first cause of action as one to "quiet title," Defendants treated the first cause of action as both a claim to quiet title and a claim for "wrongful foreclosure," employing the latter label in papers filed in the trial court. Gallardo refers to this cause of action as a "wrongful foreclosure case" in his opening brief on appeal. But the foreclosure sale has not taken place. Since the gravamen of Gallardo's complaint is that the parties that initiated the foreclosure did not have the authority to foreclose, his complaint appears to state a cause of action to enjoin a foreclosure sale by non-authorized entities.

"Erroneous or confusing labels attached by the inept pleader are to be ignored if the complaint pleads facts [that] would entitle the plaintiff to relief." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.) Following a judgment of dismissal after a demurrer, we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Ibid.*) Since Gallardo's opening brief clearly states that he does not seek to quiet title to the true noteholder, for the purpose of our review, we shall treat the first cause of action as a claim to enjoin a foreclosure sale by non-authorized entities.

As we have noted, a number of courts have held or suggested that the tender requirement "does not apply to actions seeking to *enjoin* a foreclosure sale—at least where the lenders had allegedly not complied with a condition precedent to foreclosure." (*Intengan*, *supra*, 214 Cal.App.4th at pp. 1053-1054, original italics.) Gallardo's complaint alleges the Notice of Default was improperly recorded in part because

18

Defendants failed to comply with section 2923.5.[2]  We agree that the tender requirement did not apply in this case and the court erred when it sustained the demurrer to the first cause of action on that basis.  We turn next to Gallardo's other arguments regarding his claim to enjoin the foreclosure sale.

## B.  Incomplete or Inaccurate Record of Title

Gallardo contends the court erred in sustaining the demurrer because the complaint alleges "an incomplete and/or inaccurate title record of assignment."  Quoting paragraph 11 of the complaint, he argues the Notice of Default was not properly recorded because the Note "was not lawfully endorsed, assigned and transferred by [MortgageIt] to each succeeding lender claiming an interest [in the Note] in accordance with the requirement[s] of the [UCC]."  He concludes that these allegations are "allegation[s] of fact," which if proven true mean that there are "pretenders" to the noteholder's rights under the Deed of Trust.

We begin with the observation that these allegations are conclusions of law that we do not accept as true on demurrer.  (*Jenkins*, *supra*, 216 Cal.App.4th at p. 506.)  And as we explain in the next section, documents that the court properly judicially noticed, in combination with factual allegations of the complaint, contradict the conclusory

---

[2]  "In 2008, the Legislature enacted Civil Code section 2923.5 in response to the foreclosure crisis.  (Stats. 2008, ch. 69, §§ 1, 2.)  It prohibits filing a notice of default until 30 days after the lender contacts the borrower 'to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'  (. . . § 2923.5, subds. (a)(1), (2); see *Mabry*, *supra*, 185 Cal.App.4th at p. 225.)"  (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 525-526 (*Stebley*).)  "However, . . . section 2923.5 does not provide for damages, or for setting aside a foreclosure sale, . . . .  [T]he *sole* available remedy is 'more time' before a foreclosure sale occurs.  . . .  Further, the statute does not—and legally could not—require the lender to modify the loan."  (*Stebley*, at p. 526, original italics.)

19

allegations that the title record is incomplete and that Defendants did not have the right of sale or the authority to foreclose.

### 1. *Request for Judicial Notice*

As we have noted, in support of their demurrer, Defendants asked the trial court to take judicial notice of eight documents. Two of those documents were attached to and incorporated into the complaint by reference. Most of the documents had been recorded, and one was from the FDIC website. Although Defendants identified the documents in their demurrer, they only attached one of them to their request for judicial notice. Gallardo did not object to the request for judicial notice in his opposition papers. But Defendants did not file a complete request for judicial notice with all eight documents attached until the reply phase of the briefing, 12 days after Gallardo filed his opposition. In support of their request for judicial notice, Defendants cited Evidence Code sections 452 and 453, which govern permissive judicial notice. They did not identify which subdivisions of Evidence Code section 452 support their requests. At the hearing on the demurrer, Gallardo once again failed to object to the request for judicial notice. But the trial court did not rule on the request at the hearing.

Although the record does not contain an order on the request for judicial notice, we assume the trial court granted the request. (*Aranoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918-919 [although there was no order granting judicial notice, appellate court assumed trial court granted judicial notice because party requesting judicial notice complied with Evid. Code § 453 by giving the opposing party "sufficient notice of the request and furnish[ing] the trial court with sufficient information to enable it take judicial notice"; Evid. Code § 456 only requires court to make a record when it denies a request for judicial notice].) We review the trial court's ruling on a request for judicial notice for an abuse of discretion. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 264.)

20

" ' "Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter." ' " (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117 (*Poseidon*).) When ruling on a demurrer, "[a] court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading." (*Ibid.*) When judicially noticed facts contradict the conclusory allegations of the complaint, those allegations may be disregarded. (*Intengan*, *supra*, 214 Cal.App.4th at p. 1055.) "The underlying theory of judicial notice is that the matter being judicially noticed is a law or fact that is *not reasonably subject to dispute*." (*Lockley v. Law Offices of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 (*Lockley*), original italics, citing in part Evid. Code, § 451, subd. (f).)

"Judicial notice may not be taken of any matter unless authorized or required by law." (Evid. Code, § 450.) Matters that are subject to judicial notice are listed in Evidence Code sections 451 (mandatory judicial notice) and 452 (permissive judicial notice). Two Court of Appeal decisions that discuss the propriety of taking judicial notice of recorded documents are *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1374-1375 (*Herrera*) and *Fontenot*, *supra*, 198 Cal.App.4th at pp. 264-267.

The *Fontenot* court observed that "courts have taken judicial notice of the existence and recordation of real property records, including deeds of trust, when the authenticity of the documents is not challenged," pursuant to Evidence Code section 452, subdivisions (c) and (h). (*Fontenot*, *supra*, 198 Cal.App.4th at p. 265.) Those subdivisions "permit a court, in its discretion, to take judicial notice of '[o]fficial acts . . . of any state of the United States' and '[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to

21

sources of reasonably indisputable accuracy.' " (*Id.* at p. 264.) "The official act of recordation and the common use of a notary public in the execution of such documents assure their reliability, and the maintenance of the documents in the recorder's office makes their existence and text capable of ready confirmation, thereby placing such documents beyond reasonable dispute." (*Id.* at p. 265.)

But as the *Herrera* court explained, " 'the fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein.' " (*Herrera*, *supra*, 196 Cal.App.4th at p. 1375.) The *Herrera* court held that judicial notice of recorded documents in that case, which recited that Deutsche Bank was the "present beneficiary" and that JPMorgan Chase was the "successor in interest" to the original lender, "did not establish that Deutsche Bank was the beneficiary or that [the trustee] was the trustee" under the deed of trust at issue and that the defendants had therefore failed to establish "facts justifying judgment in [their] favor" through their request for judicial notice. (*Id.* at p. 1376.)

The *Fontenot* court observed that "courts have taken judicial notice not only of the existence and recordation of recorded documents but also of a variety of matters that can be deduced from the documents. In *Poseidon*, for example, the court affirmed the trial court's taking judicial notice, in sustaining a demurrer, of the parties, dates, and legal consequences of a series of recorded documents relating to a real estate transaction. [Citation.] Although the court recognized that it would have been improper to take judicial notice of the truth of statements of fact recited within the documents, the trial court was permitted to take judicial notice of the legal effect of the documents' language when that effect was clear. [Citation.] Similarly, in *McElroy v. Chase Manhattan Mortgage Corp.* (2005) 134 Cal.App.4th 388, [394] . . . , the court took judicial notice of the recordation of a notice of default under a deed of trust, the date of the notice's recording, and the amount stated as owing in the notice for the purpose of demonstrating the plaintiffs had notice of the amount claimed to be owing and the opportunity to cure a

22

defective tender." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 265.) "Taken together, the decisions . . . establish that a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Ibid.*)

The application of these rules is illustrated by *Intengan*, which turned on the propriety of granting judicial notice of recorded documents. Intengan alleged wrongful foreclosure on a variety of grounds. As a first ground, Intengan—like Gallardo—alleged that the foreclosing beneficiary under a deed of trust lacked standing to foreclose, that the defendants had made transfers and assignments of the subject loan, and that due to the chain of assignments, the "current lender/beneficiary/assignee" with legal authority to foreclose was unknown. (*Intengan*, *supra*, 214 Cal.App.4th at p. 1054.) The court concluded that Intengan's pleading failed "to allege wrongful foreclosure on this ground. The records of which the court took judicial notice, without Intengan's objection, identif[ied] the foreclosing beneficiary to be the Bank of New York. Specifically, the recorded deed of trust names MERS as the original beneficiary, the recorded assignment of the deed of trust assigns all beneficial interest under the deed of trust from MERS to Bank of New York as the new beneficiary, and the notice of trustee sale was dated and recorded after Bank of New York became the beneficiary. [Citations.] While Intengan's pleading include[d] the unsupported conclusion that there was no assignment of the deed of trust in favor of 'The Bank of New York . . . ,' the recorded assignment of which the court took judicial notice show[ed] there was, and Intengan neither allege[d] nor argue[d] facts from which the assignment might be inferred to be invalid." (*Ibid.*) The court held that since the judicially noticed facts contradicted the conclusory allegations of Intengan's third amended complaint, those allegations could be disregarded. (*Id.* at

23

p. 1055.)  The court applied similar reasoning to dispose of two other factual bases for Intengan's wrongful foreclosure claim.  (*Ibid.*)

The court nonetheless held that Intengan had stated a cause of action for wrongful foreclosure on a fourth ground, namely that the defendants had failed to comply with section 2923.5, which "precludes a trustee . . . or mortgage servicer . . . from recording a notice of default until 30 days after the loan servicer has made initial contact with the borrower to assess the borrower's financial situation and explore options for avoiding foreclosure, or has satisfied the due diligence requirements of the statute." (*Intengan*, *supra*, 214 Cal.App.4th at p. 1056.)  Intengan had alleged failure to comply with this requirement in her third amended complaint.  In support of their demurrer, the defendants asked the court to take judicial notice of a notice of default that included a declaration by Samantha Jones, an employee of the loan servicer, that the bank had complied with the requirements of section 2923.5.  (*Ibid.*)  In her opposition to the demurrer, Intengan argued specific facts that disputed the truthfulness of Jones's declaration, "denying that she was ever contacted or received any telephone message." (*Id.* at p. 1057.)  The court held that "[w]hile judicial notice could properly be taken of the *existence* of Jones's declaration, it could not be taken of the facts of compliance asserted *in* the declaration, at least where, . . . Intengan has alleged and argued that the declaration is false and the facts asserted in the declaration are reasonably subject to dispute." (*Ibid.*)  The court explained that a "demurrer is ' "simply not the appropriate procedure for determining the truth of disputed facts," ' " and concluded that Intengan had stated a cause of action for wrongful foreclosure based on the purported failure to comply with section 2923.5 before recordation of the notice of default.  (*Id.* at pp. 1058, 1060.)

## 2. *Judicially Noticed Documents Show a Complete Chain of Title to Deutsche Bank*

According to the Deed of Trust, which is attached to the complaint, the original lender was MortgageIt, the original trustee was Chicago Title Company and the original "beneficiary" or nominee was MERS. According to the Deed of Trust, Gallardo "grant[ed] and convey[ed]" the Property "in trust, with power of sale," to Chicago Title as trustee. The Deed of Trust also provided that "MERS (as nominee for [the lender and its] successors and assigns) has the right to exercise any and all of the [interests granted by Gallardo], including, but not limited to, the right to foreclose and sell the Property . . . ."

Gallardo does not challenge the authenticity of any of the documents attached to Defendants' request for judicial notice. Based on the authority discussed above, except as otherwise noted, we may properly judicially notice the following facts from the documents attached to Defendants' request for judicial notice. According an assignment of deed of trust that was recorded in February 2009, MERS as nominee for MortgageIt transferred "all beneficial interest under [the] Deed of Trust . . . together with the Promissory Note secured by said Deed of Trust" to "IndyMac Federal Bank FSB" effective November 22, 2008. According to an assignment of deed of trust that was recorded on September 30, 2011, the FDIC "as Receiver for IndyMac Federal Bank FSB" transferred all beneficial interest under the Deed of Trust, together with the note described therein, to Deutsche Bank National Trust Company, as trustee of the Trust, effective August 30, 2011. The statement that FDIC was the receiver for IndyMac Federal Bank in this assignment is hearsay and may not be judicially noticed for the truth of the matter. But the allegations of Gallardo's complaint fill in this gap in the chain of title. The complaint alleges that "IndyMac Bank, FSB" was received by the FDIC in 2008. According to a substitution of trustee recorded on September 30, 2011, Deutsche Bank National Trust Company, as trustee of the Trust, substituted Meridian as trustee in

place of the original trustee, Chicago Title Company, effective August 30, 2011. Meridian recorded the Notice of Default on September 30, 2011 and the Notice of Sale on January 3, 2012. The Notice of Default advised Gallardo that he could contact Deutsche Bank through Meridian "[t]o find out the amount [he] must pay" or "to arrange for payment to stop the foreclosure."

Our analysis of the facts the court could properly judicially notice, in combination with the allegations of the complaint, demonstrates that there was a complete chain of title from the original lender (MortgageIt) to Deutsche Bank and that Deutsche Bank then substituted Meridian in place of the original trustee. Since these judicially noticeable facts contradict the conclusory allegations of the complaint, those allegations may be disregarded. (*Intengan*, *supra*, 214 Cal.App.4th at pp. 1054-1055.)

### C. Failure to Comply with the UCC

Gallardo argues the Note "was not validly assigned to the person falsely identified as an assignee of the trust deed." In particular, quoting paragraph 11 of the complaint, he asserts the Note "was not lawfully endorsed, assigned and transferred by the original lender to each succeeding lender claiming an interest therein in accordance with the requirements of the [UCC] prior to any recording adverse to [Gallardo's] title . . . ." (Emphasis omitted.)

This court rejected a similar assertion in *Debrunner*, *supra*, 204 Cal.App.4th 433. Like Gallardo, the plaintiff in *Debrunner* argued that we must look to the UCC for guidance, because a promissory note is a negotiable instrument that cannot be assigned without a valid endorsement and physical delivery to the assignee. (*Id.* at p. 440.) As this court explained in *Debrunner*, "many federal courts have rejected this position, applying California law. All have noted that the procedures to be followed in a nonjudicial foreclosure are governed by sections 2924 through 2924k, which do not require that the note be in the possession of the party initiating the foreclosure.

26

[Citations.]" (*Debrunner*, at p. 440.) "Notably, section 2924, subdivision (a)(1), permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.' The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid." (*Debrunner*, at p. 440.)

### D. Alleged Failure to Comply with Section 2932.5

Gallardo argues that section "2932.5 requires that an assignment of a trust deed be recorded before the power of sale can be exercised by a putative assignee of the note and trust deed, and further that the title record must contain a continuous 'chain' of assignments of the interests in a trust deed without any gaps in the ownership record before a Notice of Default or following Notice of Sale can be recorded on behalf of a putative beneficiary of a trust deed." We understand Gallardo's contention to be that the Notice of Default and the Notice of Sale were invalid because Defendants did not comply with section 2932.5.

Section 2932.5 provides: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded." Gallardo asserts that section 2932.5 applies to deeds of trust. He acknowledges that *Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118 (*Calvo*) held that section 2932.5 does not apply to deeds of trust. But Gallardo argues that *Calvo* is factually distinguishable, and that the holding in *Calvo* was based on the "formerly obscure case" of *Stockwell v. Barnum* (1908) 7 Cal.App. 413 (*Stockwell*), which he contends was wrongly decided.

The Fourth District Court of Appeal recently reviewed the applicability of section 2932.5 to deeds of trust in *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481 (*Rossberg*). The plaintiffs (borrowers) in *Rossberg* argued that the notice of default recorded in that case was invalid and void under section 2932.5 because the trustee recorded the notice of default more than a year before the substitute beneficiary recorded an assignment of the deed of trust. The court held that the borrowers were "mistaken because section 2932.5 does not apply to deeds of trust." (*Rossberg*, at p. 1497.) The court explained: " 'It has been established since 1908 that this statutory requirement that an assignment of the beneficial interest in a debt secured by real property must be recorded in order for the assignee to exercise the power of sale applies only to a mortgage and not to a deed of trust.' " (*Ibid.*, quoting *Calvo*, *supra*, 199 Cal.App.4th at p. 122.) A U.S. Bankruptcy court reached the opposite conclusion in *In re Cruz* (Bankr. S.D. Cal. 2011) 457 B.R. 806, 814-817. But, "[a]t least one California appellate court . . . has refused to follow *Cruz* because it misunderstood how deeds of trust operate." (*Rossberg*, at p. 1498, citing *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 335-336.)

The *Rossberg* court held, as it had in *Jenkins*, that "section 2932.5 [is] inapplicable to trust deeds" and that "nothing in section 2932.5 rendered the notice of default invalid." (*Rossberg*, *supra*, 219 Cal.App.4th at p. 1498, citing *Jenkins*, *supra*, 216 Cal.App.4th at p. 518; see also *In re Macklin* (Bankr. E.D.Cal. 2013) 495 B.R. 8, 19-25 [following *Calvo*].) We will follow *Calvo*, *Haynes*, *Jenkins*, and *Rossberg* and conclude that section 2932.5 does not apply to Gallardo's deed of trust.

Even if section 2932.5 applied, based on facts the court properly judicially noticed and allegations of the complaint, there was a continuous chain of title between the original beneficiary (MortgageIt) and the assignee beneficiary that ordered the foreclosure (Deutsche Bank). In addition, the assignment of the Deed of Trust to Deutsche Bank—which was executed and acknowledged on September 2, 2011—was

recorded on September 30, 2011, the same day that the Notice of Default was recorded. The Notice of Sale was recorded on January 3, 2012. Gallardo filed this action one week before the date set for the trustee's sale, and it appears the sale has never taken place. Thus, even if section 2932.5 applied, the assignment to Deutsche Bank was acknowledged and recorded before the power of sale was exercised, as required by section 2932.5.

Gallardo nonetheless argues that before Defendants can foreclose based on the Notice of Default recorded in September 2011, "they must first record the correct series of assignments showing the putative 2011 assignor" (the FDIC as receiver for IndyMac Federal Bank) "has the right to assign any rights under the deed of trust pursuant to [section] 2932.5." But, as we have already explained, section 2932.5 does not apply to deeds of trust. Moreover, facts that were properly judicially noticed from the assignment of deed of trust recorded in 2009 demonstrate that MortgageIt (the original beneficiary) assigned its interest under the Deed of Trust to IndyMac Federal Bank in November 2008 and the complaint alleges that IndyMac Bank was received by the FDIC in 2008. As we have stated previously, these facts demonstrate that IndyMac Federal Bank was a substitute beneficiary under the Deed of Trust and that the FDIC, as receiver for IndyMac Federal Bank, subsequently assigned IndyMac's interest in the Deed of Trust and the Note to Deutsche Bank.

### E. Possession of the Note is not Required to Foreclose

Gallardo "disputes whether defendants can prove the intervening unrecorded assignments or other transfers (inferable from the receivership(s) and [Trust]) were accompanied by endorsement and delivery of the promissory note." He argues that "[o]nly the party who holds the original note properly endorsed over" has the right to assign the Note and "until there is a title record of assignments tracking the actual 'path'

29

of the note between defendants . . . Deutsche Bank cannot show the legal right to foreclose."

Section 2924, subdivision (a)(1), authorizes a "trustee, mortgagee, or beneficiary, or any of their authorized agents" to record the notice of default. The statute does not limit the power of sale to the beneficiary, or "the party who holds the original note properly endorsed over." In *Debrunner*, *supra*, 204 Cal.App.4th at pages 440-442, this court rejected the theory that only the entity in possession of the promissory note may foreclose. This court saw "nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note." (*Id.* at p. 440.) " 'There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure.' " (*Id.* at p. 441; see also *Jenkins*, *supra*, 216 Cal.App.4th at pp. 515-516 [notice of default proper where recorded by agent of beneficiary]; *Siliga v. Mortgage Electronic Registration Systems, Inc*. (2013) 219 Cal.App.4th 75, 85 [same].)

### F. MERS's Capacity to Transfer the Note

Gallardo also argues that MERS was only a "nominal beneficiary" and since it was not the lender, it lacked capacity to transfer the Note.

The " 'MERS System' " was "devised by the mortgage banking industry to facilitate the securitization of real property debt instruments. . . . MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is

30

designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot*, *supra*, 198 Cal.App.4th at pp. 267-268.)

Like Gallardo, the plaintiff in *Fontenot* alleged that "MERS lacked the authority to assign the note because it was merely a nominee of the lender and had no interest in the note." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.) The court rejected that assertion: "Contrary to [the] plaintiff's claim, the lack of a possessory interest in the note did not necessarily prevent MERS from having the authority to assign the note. While it is true MERS had no power *in its own right* to assign the note, since it had no interest in the note to assign, MERS did not purport to act for its own interests in assigning the note. Rather, the assignment of deed of trust states that MERS was acting as nominee for the lender, which did possess an assignable interest. A 'nominee' is a person or entity designated to act for another in a limited role—in effect, an agent. [Citations.] The extent of MERS's authority as a nominee was defined by its agency agreement with the lender, and whether MERS had the authority to assign the lender's interest in the note must be determined by reference to that agreement. [Citations.] Accordingly, the allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender." (*Id.* at pp. 270-271, original italics.) Furthermore, the Deed of Trust states that "Borrower [(Gallardo)] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ."

For these reasons, we reject the contention that MERS lacked capacity to assign the Note.

31

### G. Alleged Failure to Transfer the Note with the Deed of Trust

Gallardo asserts that "[m]ere assignment of the trust deed is a nullity in California unless the note is also transferred at the same time." He contends the first assignment of the Deed of Trust did not mention the Note. This assertion, even if it recites the correct legal rule, is not supported by the record since both recorded assignments indicate that the assignor assigned "all beneficial interest" under the Deed of Trust "together with the Promissory Note secured by said Deed of Trust."[3] Gallardo argues "there is also the problem of the effect of Indymac's receivership, which intervened between the . . . 2009 assignment and the 2011 assignment[,] and the uncertainty of MortgageIt's status during that period." This argument is unsupported by the record since the complaint alleges that Indymac was received by the FDIC in 2008, which was before either assignment.

### H. Leave to Amend

As stated previously, when the trial court sustains a demurrer without leave to amend, we review its determination that no amendment could cure the defect for an abuse of discretion. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) The trial court abuses its discretion if "there is a reasonable possibility the plaintiff could cure the defect with an amendment." (*Ibid*.) This question is reviewable on appeal "even in the absence of a request for leave to amend, and even if the plaintiff does not claim on appeal that the trial court abused its discretion in sustaining the demurrer without leave to amend." (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 970-971 (*Aubry*).) "The plaintiff has the burden of proving that an amendment would cure the defect," and may meet that burden

---

[3] The quoted language is from the first assignment of the Deed of Trust. The second assignment uses the phrase "TOGETHER with the note or notes therein described and secured thereby."

for the first time on appeal.  (*Schifando*, at p. 1081; *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 (*Smith*).)

To satisfy his burden on appeal, Gallardo " 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]  The assertion of an abstract right to amend does not satisfy this burden. [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.] Allegations must be factual and specific, not vague or conclusionary.  [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44, (*Rakestraw*).)  "If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment."  (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)

Gallardo's written opposition to the demurrer challenged the legal grounds for the demurrer, but did not suggest any way in which his complaint could be amended in the event the court sustained the demurrer.  At the hearing on the demurrer, Gallardo requested leave to amend, arguing generally that "[t]his [was his] first version of the complaint."

On appeal, citing *Aubry*, *supra*, 2 Cal.4th 962, Gallardo argues that he "did not have an affirmative duty to state proposed amendments" and that "the issue of whether the complaint could be amended to state a cause of action on which relief can be granted is one of law for this court, reviewing the complaint de novo."  Regarding his quiet title claim, Gallardo argues on appeal that the tender requirement does not apply and that "it was error to refuse leave to amend since, obviously, [Gallardo] may have been able to cure the alleged pleading defect and make a tender."  But Gallardo does not suggest any

ways in which his complaint can be amended to address the other legal points we have considered under the first cause of action.

Since we have rejected each of Gallardo's legal arguments related to his first cause of action and he has not proposed any way in which his complaint can be amended to address those points, we conclude that the trial court did not abuse its discretion when it sustained the demurrer as to the first cause of action without leave to amend.

## VI. Second Cause of Action for an Accounting

Citing *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 (*Teselle*), the trial court sustained the demurrer to Gallardo's second cause of action for an accounting, reasoning that such a claim " 'requires a showing . . . that some balance is due the plaintiff that can only be ascertained by an accounting.' " Since Gallardo alleges that he owes an amount to Defendants, the court concluded he could not state a cause of action for an accounting. On appeal, Gallardo acknowledges that he still owes some amount on the Note, which is "payable in periodic installments," but argues that his second cause of action "seeks a determination of the correct interest rate and an accounting of past payments, toward ascertaining the correct deficiency balance" under the Notice of Default. He asserts that if he "overpaid past payments he can be awarded damages today on the amount of the overpayment even if more payments will accrue . . . in the future" and that "[s]o long as the complaint alleges [he] is entitled to any form of credit, offset or balance," he has stated a cause of action for an accounting.

### A. Nature of Action for an Accounting

A cause of action for an accounting is equitable in nature. (*Civic W. Corp. v. Zila Indus., Inc.* (1977) 66 Cal.App.3d 1, 14 (*Civic*); 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.) "An action for an accounting may be brought to compel the defendant to account to the plaintiff for money or property (1) where a fiduciary

34

relationship exists between the parties, or (2) where, even though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. [Citation.]" (*Jolley v. Chase Home Fin., LLC* (2013) 213 Cal.App.4th 872, 910.) "[A] fiduciary relationship between the parties is not required to state a cause of action for accounting. . . . The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." (*Teselle*, *supra*, 173 Cal.App.4th at pp. 179-180.)

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. (*Brea v. McGlashan* (1934) 3 Cal.App.2d 454, 460, . . . ; [citation].) [¶] An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation. (*St. James Church of Christ Holiness v. Superior Court* (1955) 135 Cal.App.2d 352, 359, . . . .) A plaintiff need not state facts that are peculiarly within the knowledge of the opposing party. [Citation.]" (*Teselle*, *supra*, 173 Cal.App.4th at pp. 179-180 [cause of action for accounting did not lie for amounts the plaintiff was entitled to because of the transfer of specified real property "or the appropriation or retention of the $100,000" because they were "a sum certain or a sum that can be made certain by calculation," but the plaintiff was entitled to an accounting "of any profits made by [the] defendants on account of the [real] property"].) "A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law." (*Civic*, *supra*, 66 Cal.App.3d at p. 14.)

## B. Analysis

The complaint alleges that the "description of the index by which Gallardo's rate of interest is calculated is uncertain and ambiguous and that it cannot be ascertained

35

therefrom what the correct rate of interest is" and that the alleged deficiency amount in the Notice of Default is therefore "overstated and in excess of the true amount." The complaint alleges: "In particular paragraph 2(C) of [the Note] refers to 'a constant maturity' but also is contradictory in referring to a Federal funds rate and twelve month average based on published 'monthly yields' making it uncertain what figure as published by the Treasury in the identified data (e.g., 1 month, 6 month, 1 year, 5 year, 10 year yield) applies at any time in computing the interest rate or averages, or whether the note was intended to be a loan of the type known in the industry as a 12-Month Treasury Average (MTA or MAT) loan or a Constant-Maturity Treasury (CMT) loan or some other type." The allegation that the description of the index in the Note is uncertain and ambiguous is a contention or conclusion of law that we do not assume is true in evaluating the court's ruling on the demurrer. (*Evans*, *supra*, 38 Cal.4th at p. 6.)

The Note, which is attached to the complaint, defines the index used to calculate the interest rate as "the 'Twelve-Month Average" of the annual yields on *actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled 'Selected Interest Rates (H.15)'* (the 'Monthly Yields'). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the 'Current Index.' " (Italics added.) The Note contains the phrase "(MTA - Twelve Month Average Index - Payment Caps)" at the top of the first page, under the title of document, and the phrase "PayOption ARM Note - MTA Index" in the lower left hand corner of each page.

Contrary to Gallardo's allegation that it is not clear whether his interest rate is based on the MTA, the CMT, or some other index, the Note—a copy of which is attached to the complaint as an exhibit—states that it is based on the "MTA Index." If facts appearing in exhibits to the complaint conflict with the allegations of the complaint, the

36

facts stated in the exhibits control, unless the exhibit is ambiguous. (*SC Manufactured*, *supra*, 162 Cal.App.4th at p. 83.) Since the Note contradicts the allegations of the complaint, we rely on the wording of the Note. The Note sets forth a formula for determining Gallardo's adjustable interest rate each month. The description of the index used in that calculation is clear and unambiguous. (See italicized language in previous paragraph.)

Gallardo's claim for an accounting is based on the premise that the description of the index used to calculate the amount of interest due each month on his adjustable rate mortgage is uncertain and ambiguous and that he therefore may be due some sort of credit against amounts paid, and that the amount of the deficiency stated in the Notice of Default is therefore incorrect. But Gallardo does not allege that (1) the amount of interest charged was incorrect or different from what was described in the Note; (2) the lender misapplied any of the payments Gallardo made; or (3) amounts charged for late payment penalties or other expenses due under the Note are incorrect. Since the description of the index used to calculate Gallardo's interest rate each month is unambiguous, we hold that any amounts due Gallardo as a credit under the Note may be made certain by calculation and that therefore there is no need for an accounting. (*St. James Church of Christ Holiness v. Superior Court*, *supra*, 135 Cal.App.2d at p. 359.) "No California decision holds that the existence of a complicated accounting relationship between parties by itself permits the maintenance of a lawsuit between them when no money is owed or property must be returned." (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 593-594.) If Gallardo is maintaining that he overpaid the noteholder and that he is entitled to a credit or offset against amounts due on the Note in the future, that would *not* be a balance due him that could be ascertained only by an accounting. Nor is the specification of the amounts due so complicated that it could not be determined in a legal action for damages. (*Jolley*, *supra*, 213 Cal.App.4th at p. 910.)

Regarding leave to amend, Gallardo argues that his cause of action for an accounting "could have been amended to state [his] best 'guesstimate' of the amount and allege 'X dollars' are due." These proposed amendments do not alter our analysis or persuade us that an accounting remedy is required in this case. We therefore conclude that the trial court did not err in sustaining the demurrer to the cause of action for an accounting without leave to amend.

## VII.   *Third Cause of Action for Unfair Business Practices*

Gallardo's third cause of action alleged that Defendants engaged in "deceptive, fraudulent and unfair business practices" in violation of California's unfair competition law (UCL), Business and Professions Code section 17200 et seq.

### A. The UCL

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949, . . . .) In service of that purpose, the Legislature framed the UCL's substantive provisions in ' "broad, sweeping language" ' [citations] and provided 'courts with broad equitable powers to remedy violations' [citation]." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320, citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 181 (*Cel-Tech*) and *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 ["The Legislature intended this 'sweeping language' to include ' "anything that can properly be called a business practice and that at the same time is forbidden by law' "].) The UCL "governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' " (*Cel-Tech*, at p. 180.)

Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three types of unfair competition: acts or practices that are (1) unlawful, or (2) unfair, or (3) fraudulent. (*Cel-Tech*, *supra*, 20 Cal.4th at p. 180.) " ' "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' " (*Ibid.*)

## B. Unfair Business Practices Alleged in the Complaint

Paragraph 27 of Gallardo's complaint alleged that Meridian "individually and as agent for its putative appointor(s) engaged in a . . . *fraudulent* and *unfair* business practice" of publishing and recording notices of trustee sales that failed to (1) identify the party ordering the foreclosure and (2) accurately describe the property involved, as required by law. (Italics added.) Although Meridian has not appeared in this action and was not a party to the demurrer, the complaint alleges that Meridian was the agent for others. According to the substitution of trustee, Deutsche Bank substituted Meridian as trustee after the Deed of Trust was transferred to Deutsche Bank. Since Deutsche Bank was a party to the demurrer, we shall review these allegations to the extent they may apply to Deutsche Bank on an agency theory.

Paragraph 28 of Gallardo's complaint alleged that "all defendants" engaged in the unfair business practices of (1) "failing to secure and endorse over . . . the original promissory note," which created a risk that the original noteholder would demand payment from the borrower after the Property was sold in foreclosure; and (2) "recording notices creating clouds upon the title of plaintiffs," before complying with the UCC and "perfect[ing] a right to record the same."

Since the complaint alleges conduct that arguably violates all three prongs of the UCL, we will briefly discuss each type of violation.

39

## C. Analysis under the Unlawful Prong of the UCL

"By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech*, *supra*, 20 Cal.4th at p. 180.) The only statutory violation expressly alleged in the complaint is the alleged failure to secure and endorse over the Note and otherwise comply with the UCC before recording the notices of default and sale. But, as we have noted, courts have uniformly rejected arguments that the beneficiary or trustee must comply with the UCC before initiating a nonjudicial foreclosure. (*Debrunner*, 204 Cal.App.4th at pp. 440-441.) If the complaint fails to state a violation of an underlying statute, a derivative claim of liability under the UCL based on the same statute also fails. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 329 [since the defendants' conduct did not violate the Cartwright Act, it was not unlawful under the UCL]; *Prachasaisoradej v. Ralphs Grocery Co. Inc.* (2007) 42 Cal. 4th 217, 244; *Smith*, *supra*, 93 Cal.App.4th at pp. 718-719 [defendant insurers' conduct, which did not violate Insurance Code section 11580.2, not unlawful under the UCL].) Since Gallardo's claims based on the UCC fail, he cannot state a claim for unfair business practices based on alleged violations of the UCC.

Paragraph 27 of the complaint does not identify a specific statutory violation. Gallardo nonetheless argues on appeal that the allegation in that paragraph that Meridian "engaged in a statewide practice of misdescribing real property in their Notice of Sale forms" violates section 2924f, former subdivision (b)(1), which prescribes the contents of a notice of sale.[4] The complaint does not allege with any specificity the manner in which Meridian "misdescribed" property in its notices of sale, and an examination of the Notice

---

[4] Section 2924f was amended in 2012 and former subdivision (b)(1) was rewritten as subdivisions (b)(1) to (b)(7) without substantive change. (Stats. 2012, ch. 556.) The provisions in former subdivision (b)(1) regarding the required contents of a notice of sale are now found in subdivision (b)(5).

of Sale does not reveal any problem with the property description. Gallardo's complaint alleges that he is the owner of "real property commonly known as 107 Farm Hill Way, Los Gatos, California 95032." Section 2924f, former subdivision (b)(1) requires, among other things, that a notice of sale describe the property to be sold, including the assessor's parcel number and the street address or other common designation, if any. The Notice of Sale described the property as "107 Farm Hill Way, Los Gatos, California 95032" and contained the assessor's parcel number: "424-25-047." Thus, contrary to the conclusory allegations of the complaint and Gallardo's argument on appeal, the Notice of Sale complied with section 2924f by setting forth the correct street address of the property and the assessor's parcel number. Since the allegations of the complaint combined with facts that are properly judicially noticed reveal that there is no violation of section 2924f, subdivision (b)(1), Gallardo's unfair business practices claim based on section 2924f necessarily fails. (*Smith*, *supra*, 93 Cal.App.4th at p. 718.)

As for Gallardo's allegation that Meridian failed to identify the party ordering the sale in the Notice of Sale, the complaint does not allege that such conduct was unlawful. Nor does Gallardo discuss this allegation in his appellate briefs. Moreover, section 2924f does not require that the notice of sale identify the party ordering the foreclosure. Instead, when the property has a street address or other common designation, it requires the notice to identify and provide contact information for the trustee or other person conducting the sale, which was done in this case. (§ 2924f, subd. (b)(5), former subd. (b)(1).) We therefore conclude that Gallardo cannot state a UCL claim under the unlawful prong based on this allegation.

### D. Analysis under the Unfair and Fraudulent Prongs of the UCL

The proper definition of the term "unfair" in a consumer action under the UCL is uncertain. (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 646.) "In *Cel-Tech,* the court left open the question of whether its definition of 'unfair'

41

[(which had been applied to unfair competition claims)] should also apply to consumer actions. [Citation.] Following *Cel–Tech,* 'appellate court opinions have been divided over whether the definition of "unfair" under the UCL . . . should apply to UCL actions brought by consumers.' " (*Id.* at p. 646, citing *Cel-Tech* at p. 187, fn. 12 and *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1267 (*Bardin*.)  "According to some appellate courts, a business practice is 'unfair' under the UCL if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves.  (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403-1405.)  Other courts require 'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL . . . be tethered to specific constitutional, statutory, or regulatory provisions.' (*Bardin*[, *supra*,] 136 Cal.App.4th 1255, 1260-1261.)  Still others assess whether the practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers . . . [weighing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim.' (*Id.* at p. 1260.)  And some courts, in reviewing a pleading, apply all three tests.  (*Drum v. San Fernando Valley Bar Assn.* (2010) 182 Cal.App.4th 247, 256-257.)" (*Boschma*, *supra*, 198 Cal.App.4th at p. 252.)

A fraudulent practice under the UCL "require[s] only a showing that members of the public are likely to be deceived" and "can be shown even without allegations of actual deception, reasonable reliance and damage." (*Daugherty v. American Honda Motor Co.*, *Inc.* (2006) 144 Cal.App.4th 824, 838.)  "A claim based upon the fraudulent business practice prong of the UCL is 'distinct from common law fraud.  "A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages.  None of these elements are required to state a claim for . . . relief" under the UCL.  [Citations.]  This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages,

in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.' " (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1255.)  A fraudulent business practice " ' "may be accurate on some level, but will nonetheless tend to mislead or deceive.  . . .  A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" ' the UCL." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471 (*McKell*).)

Although the complaint contains the conclusory allegation that Meridian engaged in "fraudulent and unfair business practice[s]" in preparing its notices of sale and that all defendants engaged in "unfair business practices," it does not allege with any specificity how the conduct complained of is either unfair or fraudulent under the UCL.  Gallardo does not provide any argument as to *how* the allegations of the complaint state a claim under either the unfair or the fraudulent practices prongs of the UCL.

On appeal, the trial court's judgment is presumed to be correct and the appellant has the burden of overcoming the presumption of correctness.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)  That burden includes presenting reasoned argument and legal authority on each point raised.  " ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.]  'We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Ibid.*, citing *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  Since Gallardo has failed to provide reasoned argument and citation to authority on the question whether he can state a cause of action under either the unfair prong or the fraudulent prong of the UCL, we may treat those contentions as waived and pass them without further consideration.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

43

### E. Leave to amend

At the hearing on the demurrer, Gallardo argued that the unfair business practices claim could be amended to "allege[] statutory violations with sufficient particularity," and that the prayer could be more specific, but he did not state which statutes Defendants had violated or how he would amend the prayer. On appeal, he has added arguments regarding section 2924f, which we have already rejected.

Gallardo's brief on appeal also suggests that the complaint "can be amended to state a 'burden on the market' cause of action for [the] injunctive or restitution remedies of the UCL for, among other alleged wrongs, mis-describing real property collateral in defendants' Notice of Sale forms." We have already rejected Gallardo's contention that Meridian failed to meet the statutory requirements regarding the description of the property in the Notice of Sale. Gallardo's cursory proposal for amending his complaint does not meet the detailed requirements set forth in *Rakestraw*, *supra*, 81 Cal.App.4th at pages 43-44. Gallardo has therefore failed to meet his burden to demonstrate how his complaint can be amended.

For these reasons, we hold that the court did not err when it sustained the demurrer to Gallardo's UCL claim without leave to amend.

### VIII. *Fourth Cause of Action for Declaratory Relief*

Declaratory relief is available to resolve "an actual controversy" about a party's rights and obligations under a deed or contract "before there has been any breach of the obligation in respect to which said declaration is sought." (Code Civ. Proc., § 1060; *Pacific States Corp. v. Pan-American Bank* (1931) 213 Cal. 58, 64-65.) "Unlike coercive relief (such as damages, specific performance, or an injunction) in which a party is ordered by the court to do or to refrain from doing something, a declaratory judgment merely declares the legal relationship between the parties. Under the provisions of the

44

[Declaratory Judgment] Act, a declaratory judgment action may be brought to establish rights once a conflict has arisen, or a party may request declaratory relief as a prophylactic measure before a breach occurs." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 898.) In other words, so long as there is an actual controversy, declaratory relief may be warranted even if there has been no breach, prejudice, or harm.

Paragraph 32 of Gallardo's declaratory relief claim alleges: "A present controversy has arisen between plaintiffs and defendants in that plaintiffs contend and defendants deny that a) the contents of the Notice of Default incorrectly state the deficiency balance; b) that the deficiency balance is uncertain due to ambiguity in the term of the promissory note such that an accounting of the interest accrued during the life of the loan is necessary before a foreclosure may lawfully proceed; c) the Assignment, Substitution of Trustee, Notice of Default, and Notice of Sale are invalid and void and do not comply with law; d) that any trustee's sale or trustees [*sic*] deed that defendants may secure in [the] future will be void and of no effect on account of the things alleged by this complaint." Gallardo also alleges in paragraph 33: "A further present controversy has arisen between plaintiffs and defendants in that plaintiffs contend and defendants deny that MERS was never the true beneficiary of the trust deed herein with capacity to assign any interest therein."

Code of Civil Procedure section 1060 specifically provides for a declaration of rights under a written contract like the Note and Deed of Trust. But we have already determined that Gallardo cannot state a claim to enjoin the foreclosure sale based on the allegations of paragraph 33 regarding the capacity of MERS to assign rights under the Deed of Trust and that he cannot state a claim for an accounting based on the allegations of paragraph 32, subpart b. We therefore conclude that his claim for declaratory relief based on those grounds also fails because there is no present controversy relating to those matters.

45

In paragraph 32, subpart a, Gallardo alleges that there is a present controversy "whether the contents of the Notice of Default incorrectly state the deficiency balance." The Notice of Default advised Gallardo that the amount due on the loan was "$30,436.28 as of 09/28/11 and will increase until your account becomes current." (Original underscoring.) The existence of " 'an actual present controversy must be pleaded specifically' " and 'the facts of the respective claims concerning the [underlying] subject must be given.' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80.) Gallardo does not allege that he was not in default under the loan or allege with any specificity the amount he claims was due under the loan as of September 28, 2011. He therefore has not pleaded his declaratory relief claim with sufficient particularity. Moreover, the amount declared as due in the Notice of Default was superseded by the amount stated in the Notice of Sale, which stated that the total amount of "unpaid balance and other charges" was $859,958.28 as of January 3, 2012. Nor does Gallardo state on appeal how this allegation can be amended to state a claim for declaratory relief.

The declaratory relief claim also contains a broad allegation that there is a present controversy whether the "Assignment, Substitution of Trustee, Notice of Default, and Notice of Sale are invalid and void and do not comply with law." The trial court sustained the demurrer to the declaratory relief action based on *Gomes*, which held that there is no declaratory relief action to determine an entity's authority to initiate a nonjudicial foreclosure because the "recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.) The *Gomes* court observed that the borrower had "not asserted *any* factual basis to suspect that MERS lacks authority to proceed with the foreclosure. He simply seeks the right to bring a lawsuit to

46

find out *whether* MERS has such authority. No case law or statute authorizes such a speculative suit." (*Id.* at p. 1156, original italics.)

Gallardo argues that the holding in *Gomes* does "not preclude resolving, for example, the validity of the assignments or the trust deed or settle what the correct deficiency is . . . ." But aside from his previous arguments, which we have already rejected, Gallardo does not provide any argument that persuades us that the conclusory allegations in his complaint—that the "Assignment, Substitution of Trustee, Notice of Default, and Notice of Sale are invalid and void and do not comply with law"—are sufficient to state a cause of action for declaratory relief or that these allegations survive demurrer in light of our other conclusions. Nor does Gallardo propose any manner in which his declaratory relief action can be amended to state a cause of action.

The final basis alleged for Gallardo's declaratory relief claim is that "any trustee's sale or trustees [*sic*] deed that defendants may secure in [the] future will be void and of no effect on account of the things alleged by this complaint." But since we conclude that the court did not err in sustaining the demurrers to Gallardo's causes of action, this contention cannot serve as the basis for a declaratory relief claim standing alone.

## IX. *Application of Homeowner Bill of Rights*

In July 2012, after this appeal was filed, the Governor approved legislation commonly known as the " 'California Homeowner Bill of Rights' " (HBOR). (*Lueras*, *supra*, 221 Cal.App.4th at p. 86, fn. 14, citing Sen. Bill No. 900 (2011-2012 Reg. Sess.) & Assem. Bill No. 278 (2011-2012 Reg. Sess.).) The Legislature enacted the HBOR in response to the mortgage and foreclosure crisis "to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options," such as loan modifications.

47

(See Stats. 2012, ch. 86, § 1.)  The HBOR "prohibits, among other things, 'dual track' foreclosures, which occur when a servicer continues foreclosure proceedings while reviewing a homeowner's application for a loan modification; requires a single point of contact for homeowners who are negotiating a loan modification; and expands notice required to be given to the borrower before the lender can take action on a loan modification or pursue foreclosure.  (Governor Brown's signing message; see Stats. 2012, ch. 86, §§ 1-25; Stats. 2012, ch. 87, §§ 1-25.)  The [HBOR] became effective on January 1, 2013.  [Citations.]"  (*Lueras*, *supra*, 221 Cal.App.4th at p. 86, fn. 14.)

The HBOR applies only to foreclosures of first liens on owner-occupied residential property with no more than four dwelling units.  (§ 2924.15, subd. (a).)  It provides procedural protections to foster alternatives to foreclosure and does not entitle a borrower to a loan modification.  (§ 2923.4, subd. (a); see also *Penermon v. Wells Fargo Bank, N.A.* (N.D. Cal. June 11, 2014) 2014 U.S.Dist.LEXIS 81047, *22 (*Penermon*).)  On the other hand, the HBOR provides borrowers with a private right of action for certain material violations of the act, including violations of sections 2923.6 (dual-tracking), 2923.7 (single point of contact), 2924.10 (acknowledgment of receipt), and 2924.17 (verification of documents).  (*Penermon*, at p. *21, citing § 2924.12, subds. (a)(1),(b).)

In February 2013, Gallardo requested and this Court granted him permission to file a supplemental brief regarding the application of the then newly enacted HBOR to this dispute.  He argues that section 2924.17, subdivisions (a) and (b) and section 2924, subdivision (a)(6), which were added by the HBOR, apply to this case.[5]  He argues that

---

[5] Section 2924.17, subdivision (a) provides, in relevant part, that specified documents recorded by a mortgage servicer in connection with a nonjudicial foreclosure "shall be accurate and complete and supported by competent and reliable evidence."  Section 2924.17, subdivision (b) provides that before recording such documents, "a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."  Section 2924, subdivision (a)(6) provides:  "No entity shall record or cause a notice of default to be recorded or otherwise initiate the

48

the duty to confirm the status of the loan under sections 2924, subdivision (a)(6) and 2924.17, subdivision (a) includes a duty to ascertain whether the formalities required to transfer the underlying note were completed for each assignment. He also argues that the injunctive remedy available under the HBOR for violations of section 2924.17 (§§ 2924.12, 2924.19) and other provisions of the HBOR will apply to this case upon remand.[6]

In their supplemental respondents' brief, Defendants object that Gallardo's supplemental brief introduces new legal and factual arguments that were not alleged in the complaint and were not before the trial court. They also argue that Gallardo's supplemental brief merely reiterates the contents of the HBOR, without citing any violation of the HBOR; fails to explain how the complaint could be amended to cure the

---

foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest."

[6] Gallardo's first supplemental brief also refers to his application for a loan modification under the Home Affordable Modification Program (HAMP). But that brief does not contain a record citation demonstrating that these facts were before the trial court. Defendants argue that this information is not in the record, and our review of the record does not disclose any mention of the alleged HAMP application. Furthermore, facts that were not presented to the trial court, which are therefore not part of the record on appeal, cannot be considered on appeal. (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.) Moreover, a party's briefs should not make arguments that rely on facts outside the record and statements based on such improper matter will generally be disregarded by the appellate court. (*Kendall v. Allied Investigations, Inc.* (1988) 197 Cal.App.3d 619, 625.) And any statement in a brief concerning matters in the record, whether factual or procedural, and no matter where the reference occurs in a brief, must be supported by a citation to the record. (Rule 8.204(a)(1)(C); *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.) For all of these reasons, we shall disregard Gallardo's arguments based on alleged loan modification efforts under the HAMP.

defects therein; and undermines Gallardo's basic premise that Defendants did not have the authority to foreclose.

What the parties neglected to brief is the question of the retroactive application of the HBOR to a nonjudicial foreclosure proceeding that started before the HBOR was enacted. " '[It] is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' [Citation.] This rule has been repeated and followed in innumerable decisions. ([Citations.] See generally 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 288, pp. 3578-3579.) [¶] Indeed, Civil Code section 3, one of the general statutory provisions governing the interpretation of all the provisions of the Civil Code— including the provision at issue in this case—represents a specific legislative codification of this general legal principle, declaring that '[*no*] *part of* [*this Code*] *is retroactive, unless expressly so declared*.' . . . Like similar provisions found in many other codes (see, e.g., Code Civ. Proc., § 3; Lab. Code, § 4), section 3 reflects the common understanding that legislative provisions are presumed to operate prospectively, and that they should be so interpreted 'unless express language or clear and unavoidable implication negatives the presumption.' [Citation.]" (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207-1208; original italics.)

The Notice of Default was recorded on September 30, 2011, and the Notice of Sale was recorded on January 3, 2012, long before the HBOR took effect on January 1, 2013. (*Lueras*, *supra*, 221 Cal.App.4th at p. 86, fn. 14.) Nothing in the HBOR indicates that the Legislature intended any of the additions or amendments to the Civil Code set forth in the HBOR to apply retroactively to foreclosure proceedings that were initiated prior to its effective date.

The parties' only attempt to address the question of retroactivity is Gallardo's discussion of *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 (*20th Century*. But Gallardo's reliance on *20th Century* is misplaced. That case involved Code

of Civil Procedure section 340.9, which provides in part: "Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section." (Code Civ. Proc., § 340.9, subd. (a).) This statute expressly provided for the retroactive revival of specified claims arising out of the Northridge earthquake. In contrast, the HBOR is silent on the question of its retroactive application. As noted previously, we must therefore apply the presumption that the HBOR applies prospectively only. We therefore conclude that the HBOR does not apply in this case since the nonjudicial foreclosure proceedings here were initiated before the HBOR was enacted.

Gallardo also argues that the question of compliance with various provisions of the HBOR "will arise on remand." To the extent that Gallardo's supplemental brief can be understood to request an advisory opinion, we decline to provide one. (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 284 ["The well-established rule is that we should avoid advisory opinions"], superseded by statute on another ground as stated in *City of Palmdale v. Board of Equalization* (2012) 206 Cal.App.4th 329, 338; *Vandermost v. Bowen* (2012) 53 Cal.4th 421, 452.)

## DISPOSITION

The judgment is affirmed.

51

_____
Márquez, J.

WE CONCUR:

_____
 Rushing, P. J.

_____
 Premo, J.